UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DIANA GOODSELL, et al., | Case No.: 2:23-cv-01510-APG-DJA |
| Plaintiffs | **Order Granting Clark County School District's Motion to Dismiss** |
| v. | [ECF No. 7] |
| TEACHERS HEALTH TRUST, et al., | |
| Defendants | |

The plaintiffs are teachers and other Clark County School District (CCSD) employees who are enrolled in the Teachers Health Trust (THT) for health benefit coverage. The plaintiffs allege that THT has been mismanaged, either negligently or intentionally, to their detriment. They sue various entities and individuals on behalf of themselves and others similarly situated.[1] As relevant to this order, the plaintiffs sue CCSD for negligence and gross negligence (count three), breach of fiduciary duty (count five), violations of Nevada Revised Statutes (NRS) § 287.015 (count seven), negligence per se (count eight), consumer fraud (count nine), and fraudulent misrepresentations and omissions (count ten).

CCSD moves to dismiss all the claims against it on a variety of grounds. The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motion. I grant CCSD's motion to dismiss all claims against it with prejudice because NRS § 287.015 does not apply and because the plaintiffs must pursue their claims either through the collective bargaining agreement's grievance procedures or by filing a dispute with Nevada's Employee-Management Relations Board (EMRB).

/ / / /

---

[1] Prior to the case being removed to this court, the state court certified a class action.

# I. ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

## A. Documents Attached to the Motion to Dismiss

CCSD requests that I consider documents that it attaches to its motion to dismiss. CCSD requests that I consider the THT trust agreement because it is central to the plaintiffs' claims, no party will question the agreement's authenticity, and CCSD authenticated it. CCSD also requests that I consider the collective bargaining agreement (CBA) between CCSD and the Clark County Education Association (CCEA) because it is a public record and no party will question its authenticity. Finally, CCSD requests that I consider a 2017 arbitration decision after CCEA and CCSD reached an impasse over whether to remove THT as the health care provider under the CBA because no party will question its authenticity and the arbitrator's decision has been filed on the docket of a state court case.

The plaintiffs respond that considering matters outside the second amended complaint (SAC) would require me to convert the motion to dismiss into one for summary judgment, which I should not do. Specifically, the plaintiffs contend that I should not consider the trust agreement because a former chairman of THT's board testified that he had never seen it.

Generally, when ruling on a motion to dismiss for failure to state a claim, I "may not consider any material beyond the pleadings." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015). But I "may consider extrinsic evidence not attached to the complaint if the document's authenticity is not contested and the plaintiff's complaint necessarily relies on it." *Id.*

The plaintiffs do not dispute the CBA's authenticity, and their claims necessarily rely on it because their obligation to contribute to the trust and their right to benefits under the trust arise out of the CBA. *See, e.g.*, ECF No. 1-2 at 29 (alleging CCSD had a duty to ensure that teachers who paid premiums received the benefits "as agreed-to"), 31 (alleging CCSD owes a fiduciary duty to the plaintiffs in part because of its "promise" to ensure they had adequate health care coverage and due to its deduction of premiums from their paychecks); 37 (alleging CCSD refused "to comply with its contractual obligations to provide the agreed-upon coverage"); *see also* 8-1 at 50-52. I therefore consider the CBA without the need to convert CCSD's motion into one for summary judgment.

Additionally, I consider the trust agreement because the plaintiffs' claims necessarily rely on it, CCSD has authenticated it, and the plaintiffs do not actually question its authenticity. *See* Fed. R. Evid. 901(a), 901(b)(1), 901(b)(4); ECF No. 8-8. The plaintiffs make only a passing argument about authenticity by stating that a former chairman of the board for THT testified at his deposition that he had never seen the agreement. That the former chairman had never seen it does not mean it is not authentic and the plaintiffs do not actually contend or produce evidence that it is not authentic.[2]

---

[2] The plaintiffs do not provide the cited deposition testimony as an exhibit. Nor do they attach to their opposition any other evidence to show the agreement is not authentic.

3

However, CCSD does not explain how the plaintiffs' claims necessarily rely on the 2017 arbitration decision. I therefore decline to consider it at this stage of the proceedings.

**B. Violations of NRS § 287.015 (counts seven and eight)**

Count seven of the SAC alleges that CCSD violated NRS §§ 287.015(2) and (4) by failing to oversee THT to ensure the funds held in trust were used properly and by not participating in THT's board of trustees. ECF No. 1-2 at 33-34. Count eight alleges that CCSD's violations of § 287.015 constitute negligence per se. *Id.* at 36.

CCSD argues that the plaintiffs cannot state a claim under § 287.015 because the statute applies only to trusts created after 2003 and THT was created before then. Alternatively, CCSD argues that even if § 287.015 applies, it does not create a private right of action.

The plaintiffs respond that "nothing in the statute . . . provides such a broad and illogical exemption to the important protections of this statutory scheme." ECF No. 37 at 18. They contend that § 287.015(5) specifically refers to a trust fund established by a school district. Additionally, they argue that the Nevada Legislature could have expressly set forth a limiting provision, like it did in another subsection of § 287.015, but did not do so. The plaintiffs also assert that THT is the only entity in the state that falls within § 287.015, so the statute must apply to it. Finally, the plaintiffs contend that they have an implied private right of action under the statute.

Under NRS § 287.010(1)(c), a school district's governing body may provide group health coverage to its employees "through a self-insurance reserve fund" and may maintain the fund through deductions from employees' compensation. In 2003, the Nevada Legislature added § 287.015 to allow a local government employer and a union to agree through collective bargaining to create a trust fund to provide health benefits. Laws 2003, c. 448, § 2; NRS

4

§ 287.015(1).  Under § 287.015(2), "[a]ll contributions made to a trust fund established pursuant to this section must be held in trust and used" only to provide benefits to the employees and for reasonable administrative expenses.  Subsection 4 requires such a trust to "be administered by a board of trustees on which participating local government employers and employee organizations are equally represented." NRS § 287.015(4).

The Nevada Legislature enacted § 287.015 in 2003 by passing Assembly Bill (AB) 388. Laws 2003, c. 448, § 2.  Section 2 of the enacted law adds the relevant language in § 287.015. Section 11 of the enacted law states that "Sections 1 to 10, inclusive, of this act do not apply to any trust established before July 1, 2003." *Id.* at § 11.  Although section 11's language was not codified in the NRS, it was the language that the Nevada Legislature passed and was included in the 2003 reviser's notes to NRS § 287.015.

Under Nevada law, the NRS "may be cited as prima facie evidence of the law, [but] it 'may be rebutted by proof that the statutes cited differ from the official Statutes of Nevada.'" *Halverson v. Sec'y of State*, 186 P.3d 893, 895-96 (Nev. 2008) (en banc) (quoting NRS § 220.170(3)).  The limitation that § 287.015 does not apply to trusts established before July 1, 2003 is part of the enacted law and cannot be disregarded even though it was relegated to a reviser's note in the NRS. *See* NRS § 220.120(5) (stating that the "Legislative Counsel in keeping Nevada Revised Statutes current shall not alter the sense, meaning or effect of any legislative act . . . .").  The plaintiffs' argument that the Nevada Legislature could have set forth a limiting provision like it did in relation to § 287.015(6)[3] but did not do so is thus misplaced because the Legislature did expressly provide for that limitation. *See Pub. Emps.' Benefits*

---

[3] In 2013, § 287.015 was amended to add subsection 6, which states "[t]he provisions of NRS 287.0278 do not apply to a trust fund established pursuant to this section before October 1, 2013." *See* Laws 2013, c. 375, § 9.5.

5

*Program v. Las Vegas Metro. Police Dep't*, 179 P.3d 542, 549 (Nev. 2008) (en banc) (stating, in dicta, that "NRS 287.015 . . . does not encompass health trusts established before July 1, 2003").

A few weeks after the Legislature enacted AB 388, it passed what it referred to as "technical corrections" to various laws. Laws 2003, c. 6, § 2. One of those corrections was to add § 287.015(5), which states that "[t]he provisions of paragraphs (b) and (c) of subsection 2 of NRS 287.029 apply to a trust fund established pursuant to this section by the governing body of a school district." The plaintiffs do not explain how this language altered the limitation that § 287.015 does not apply to trusts established before July 1, 2003. Nothing in the technical corrections indicates that this reference to a school district was meant to undo § 287.015's time limitation, and the 2003 and 2013 amendments also do not strike the time limitation from the original enactment. Consequently, the relevant time limitation language has not been amended or repealed from § 287.015.

According to the SAC, THT was created in 1983, so § 287.015 does not apply to it. ECF No. 1-2 at 9. Consequently, the plaintiffs have no claim that CCSD violated that statute. The plaintiffs' assertion that THT is the only entity in the state that falls within § 287.015 is not supported by any evidence. But assuming their assertion is true, I cannot ignore the law the Nevada Legislature passed in 2003, even if that means that, in 2024, the only entity to which it could apply is not covered. If this is the case, it is an issue for the Nevada Legislature to address.

I therefore grant CCSD's motion to dismiss counts seven and eight with prejudice. Because the plaintiffs have no claim against CCSD for violating § 287.015, I need not address whether a private right of action exists under that statute.

/ / / /

/ / / /

### C. Tort Claims (counts three, five, nine, and ten)

Count three of the SAC alleges that CCSD negligently failed to provide health benefits coverage as agreed, failed to monitor THT's administrative expenses, and kept THT undercapitalized. ECF No. 1-2 at 29-30. Count five alleges that CCSD has a fiduciary relationship with the plaintiffs (1) "by virtue of [the plaintiffs'] employment with CCSD," (2) due to "CCSD's promise to the [plaintiffs] to ensure adequate health care coverage," (3) because of CCSD's deduction of premiums from the plaintiffs' paychecks, (4) as a result of "being the custodian of the trust funds," and (5) because CCSD is the only source of THT's funding. *Id.* at 31. The plaintiffs allege CCSD breached its duties "through the conduct set forth" in the SAC. *Id.* at 32. Count nine alleges that CCSD "engaged in unlawful practices in violation of the Nevada Deceptive Trade Practices Act" by making false representations "in connection [with] purporting to provide health insurance coverage to [the plaintiffs] then refusing in bad faith to comply with its contractual obligations to provide the agreed-upon coverage." *Id.* at 37. Finally, count ten alleges that the "[d]efendants intentionally made material misrepresentations and omissions of fact as alleged above, including . . . that [the plaintiffs] would have certain contractual guarantees and protections related to stop-loss, co-payments, and covered claims." *Id.* at 38.

CCSD argues that the plaintiffs' tort claims are preempted because they arise out of the health benefits THT provides under the CBA between CCSD and the CCEA. CCSD contends that rather than file this lawsuit, the plaintiffs must either use the CBA's grievance process or seek relief from the EMRB, neither of which they have done. CCSD asserts that if I order relief against CCSD, then CCSD may be subject to an unfair labor practice for making unilateral changes to the terms and conditions of the CCEA members' employment. CCSD contends that

if the plaintiffs' tort claims were to proceed, then CCEA must be joined as an indispensable party, but the plaintiffs have already dismissed their claims against CCEA with prejudice in this case.

The plaintiffs respond that their claims are grounded in CCSD's statutory obligations which are independent from, but consistent with, the CBA. The plaintiffs contend their claims are not preempted because the court will not need to interpret the CBA and the plaintiffs have not brought a breach of contract claim against CCSD.

Nevada's EMRB "may hear and determine any complaint arising out of the interpretation of, or performance under, the provisions of this chapter by the Executive Department, any local government employer, . . . [and] any employee organization or any labor organization." NRS §§ 288.110(2); 288.029. Although couched in permissive language, the Supreme Court of Nevada has held that the EMRB has exclusive jurisdiction over unfair labor practice issues falling within the ambit of Nevada's Employee-Management Relations Act (EMRA). *Rosequist v. Int'l Ass'n of Firefighters Loc. 1908*, 49 P.3d 651, 654-55 (Nev. 2002), *overruled on other grounds by Allstate Ins. Co. v. Thorpe*, 170 P.3d 989 (Nev. 2007) (en banc). As relevant here, to fall within the EMRB's exclusive jurisdiction, the SAC's claims must be against a local government employer and "must also arise out of the interpretation or performance by the [local government employer] under provisions of the Act." *Id.* at 653.

The SAC's tort claims fall within the EMRB's exclusive jurisdiction. CCSD is a local government employer. NRS § 288.060. Additionally, the tort claims arise out of CCSD's performance (or lack thereof) under the CBA and the EMRA. Under NRS § 288.150(1), "every local government employer shall negotiate in good faith through one or more representatives of its own choosing concerning the mandatory subjects of bargaining . . . with the designated

representatives of the recognized employee organization, if any, for each appropriate bargaining unit among its employees." Among the mandatory subjects of bargaining is insurance benefits. NRS § 288.150(2)(f). It is a prohibited labor practice for a local government employer to "[r]efuse to bargain collectively in good faith with the [employees'] exclusive representative as required in NRS 288.150." NRS § 288.270(1)(e). "Bargaining collectively includes the entire bargaining process, including mediation and fact-finding, provided for in [chapter 288]." *Id.*

CCSD and CCEA entered into the CBA, which governs the parties' rights and obligations regarding insurance benefits through THT. ECF No. 8-1 at 50-52. Each of the plaintiffs' tort claims relies on the CBA because that is the source of CCSD's alleged obligations and duties. The negligence claim in count three alleges that CCSD "had a duty to ensure that those who paid premiums for health care benefits received [those] benefits . . . as agreed-to." ECF No. 1-2 at 29. The breach of fiduciary duty claim alleges that CCSD owes a fiduciary duty to the plaintiffs because of its "promise" to ensure they had adequate health care coverage and due to its deduction of premiums from their paychecks. *Id.* at 31. Count nine alleges that CCSD engaged in consumer fraud when it refused "to comply with its contractual obligations to provide the agreed-upon coverage." *Id.* at 37. And count ten alleges that CCSD misrepresented that the plaintiffs "would have certain contractual guarantees . . . related to stop loss, co-payments, and covered claims, including the timely payment of covered claims." *Id.* at 38.

The CBA requires CCSD and CCEA to "negotiate with the other regarding any proposed substantive benefit changes (including without limitation increased participant contributions, reductions in benefits or increase in benefits)." ECF No. 8-1 at 50. Additionally, the CBA provides for CCSD holding employee contributions in a trust and contributing to THT "for each participating teacher" at specified contribution rates. *Id.* at 51. Under the CBA, CCSD's "only

9

obligation is to contribute the sum agreed upon" in the CBA. *Id.* Thus, if CCSD was not upholding its end of the bargain under the CBA related to health benefits and THT, it arguably engaged in an unfair practice. *See City of Reno v. Reno Police Protective Ass'n*, 59 P.3d 1212, 1217 (Nev. 2002) (en banc) ("An unfair labor practice includes the prohibited practice of unilaterally changing a subject of mandatory bargaining."). As a result, the plaintiffs' claims are subject to the EMRB's exclusive jurisdiction. The plaintiffs do not contest that they have not submitted their dispute to the EMRB.

Although the plaintiffs contend that CCSD's duties arise from statutory obligations, the plaintiffs do not identify any statute that requires CCSD to provide health benefits to its employees or take any particular action in the absence of, or in addition to, the CBA's health benefits requirements. To the extent the plaintiffs contend that their tort claims are based on statutory violations under § 287.015, these claims fail for the reasons discussed above.

Even if the EMRB did not have exclusive jurisdiction over the plaintiffs' claims, the plaintiffs still need to administratively exhaust their claims using the CBA's grievance procedure. The Supreme Court of Nevada "has followed the United States Supreme Court precedent in encouraging labor grievance procedures." *Pratt v. Clark Cnty. Dep't of Aviation*, No. 62463, 2014 WL 3764865, at *2 (Nev. July 29, 2014) (citing *Reynolds Elec. & Eng'g Co. v. United Bhd. of Carpenters & Joiners of Am., Loc. Union 1780*, 401 P.2d 60, 63-65 (Nev. 1965)); *see also* NRS § 288.150(2)(o) (requiring local government employers and unions to bargain over "[g]rievance and arbitration procedures for resolution of disputes relating to interpretation or application of collective bargaining agreements"). If a dispute is "within the scope of the grievance and arbitration clauses of the collective bargaining agreement," then the employee is required to follow those procedures. *Pratt*, 2014 WL 3764865, at *2 (simplified).

Here, the CBA sets forth grievance and arbitration procedures. ECF No. 8-1 at 8-12. Under those procedures, an employee may file a grievance over "any dispute which arises regarding an interpretation, application or alleged violation of any provisions of this Agreement." *Id.* at 8. As discussed above, each of the plaintiffs' tort claims depends on an interpretation or alleged violation of the CBA. The plaintiffs do not dispute that they have not filed grievances under the CBA's procedures.

Because the plaintiffs must either utilize the grievance process in the CBA or resort to the EMRB's exclusive jurisdiction, they cannot bring their claims against CCSD in this court. I therefore grant CCSD's motion to dismiss the plaintiffs' tort claims with prejudice to bringing them again in this court, but without prejudice to filing grievances or submitting the claims to the EMRB.[4] Because I have dismissed all the plaintiffs' claims against CCSD, I need not address CCSD's other arguments for dismissal.

## II. CONCLUSION

I THEREFORE ORDER that defendant Clark County School District's motion to dismiss **(ECF No. 7) is GRANTED**. The clerk of court is instructed to terminate Clark County School District as a defendant in this case.

DATED this 29th day of May, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[4] I express no opinion on whether the plaintiffs are time-barred from filing grievances or seeking relief before the EMRB.

11