# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DIANA GOODSELL, et al., | Case No.: 2:23-cv-01510-APG-DJA |
| Plaintiffs | **Order Granting in Part Defendant Michael Steinbrink's Motion to Dismiss** |
| v. | [ECF No. 74] |
| TEACHERS HEALTH TRUST, et al., | |
| Defendants | |

The plaintiffs are teachers and other Clark County School District (CCSD) employees who are enrolled in the Teachers Health Trust (THT) for health benefit coverage. The plaintiffs allege that THT has been mismanaged, either negligently or intentionally, to their detriment. They sue various entities and individuals on behalf of themselves and others similarly situated.[1] As relevant to this order, the plaintiffs sue former THT Chairman of the Board Michael Steinbrink for negligence and gross negligence (count three), breach of fiduciary duty (count five), negligent misrepresentations (count six), violations of Nevada Revised Statutes (NRS) §§ 287.015 and 287.010 (count seven), negligence per se (count eight), consumer fraud (count nine), and fraudulent misrepresentations and omissions (count ten).

Steinbrink moves to dismiss all the claims against him on a variety of grounds. The plaintiffs oppose dismissal. The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motion. I grant in part Steinbrink's motion, with leave to amend as set forth in this order.

/ / / /

/ / / /

---

[1] Prior to the case being removed to this court, the state court certified a class action.

# I.  ANALYSIS

In considering a motion to dismiss under Rule 12(b)(6), I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.  Generally, when ruling on a motion for failure to state a claim under Rule 12(b)(6), I "may not consider any material beyond the pleadings." *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015).  But I "may consider extrinsic evidence not attached to the complaint if the document's authenticity is not contested and the plaintiff's complaint necessarily relies on it." *Id.*

## A.  Documents Attached to the Motion to Dismiss

Steinbrink requests that I consider documents that he attaches to his motion to dismiss. He requests that I consider the THT trust formation agreement because the plaintiffs' claims necessarily rely on it and no party will question the agreement's authenticity.  He also requests that I take judicial notice of a class action complaint filed by Diana Goodsell, Sheri DeBartolo, and Paul Freaker in December 2017 in Nevada state court.

The plaintiffs respond that considering matters outside the second amended complaint (SAC) would require me to convert the motion to dismiss into one for summary judgment, which

I should not do.  Specifically, the plaintiffs contend that I should not consider the trust agreement because Steinbrink testified at a deposition that he had never seen it.

To authenticate the trust formation agreement, Steinbrink "must produce evidence sufficient to support a finding that the item is what [he] claims it is." Fed. R. Evid. 901(a).  One means of doing so is through the document's "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . , taken together with all the circumstances." Fed. R. Evid. 901(b)(4).

Steinbrink attaches to his motion to dismiss the declaration of Charles Weir, who is counsel of record for THT and Steinbrink. ECF No. 74-2.  Weir states that he has personal knowledge that the attached exhibit (ECF No. 74-3) is the October 1, 1983 Agreement and Declaration of Trust of the Clark County Classroom Teachers Association Welfare Benefit Trust Fund, although he does not state how he has personal knowledge. ECF No. 74-2 at 2.  Reviewing the document's appearance and contents, I find that it is sufficiently authenticated because it matches the plaintiffs' allegations in the SAC as to when THT was formed, how it was formed, and what it provides. *See* ECF No. 74-3.  Additionally, it is consistent with the exhibit that CCSD provided and authenticated in conjunction with its motion to dismiss, although CCSD provided amendments to the agreement that Steinbrink has not. *See* ECF Nos. 8-3; 8-8.  None of those amendments undermine the portions of the trust agreement that Steinbrink relies on.[2]

The plaintiffs make only a passing argument about authentication by stating that Steinbrink testified at his deposition that he had never seen the agreement.  That Steinbrink had never seen it does not mean it is not authentic and the plaintiffs do not actually contend or

---

[2] As discussed below, the amendments that Steinbrink did not provide support his argument that the beneficiaries lack standing to sue for depletion of THT's funds and cannot sue the trustees individually for unpaid benefits. *See* ECF No. 8-3 at 33, 40.

produce evidence that it is not authentic.[3]  I therefore will consider it.  I deny Steinbrink's

request for judicial notice of the complaint in another case because I do not need it to resolve this

motion.

### B.  Lack of Standing

In the SAC, the plaintiffs allege that they were harmed by having to pay out-of-pocket

costs for health care that THT should have paid, or they went without medical treatment because

THT was not timely administering claims. ECF No. 1-2 at 21, 29-30.  The SAC also alleges that

Steinbrink breached fiduciary duties by wasting THT's money. *Id.* at 20, 34.

Steinbrink argues that the plaintiffs cannot pursue their claims for either of these types of

injuries.  First, he contends that to the extent the plaintiffs assert injuries personal to themselves

in the form of unpaid benefits, THT's trust formation agreement precludes plan participants from

suing THT's trustees for failure to pay benefits.  Second, he asserts that to the extent the

plaintiffs are claiming depletion of THT's funds from alleged mismanagement, individual

participants lack standing because they have no interest in the allegedly mismanaged funds.

Alternatively, he argues that if the plaintiffs intend to sue for harm done directly to THT rather

than to themselves, they also lack standing because those claims belong to THT, and they have

not pursued derivative claims.

The plaintiffs respond that under the Employee Retirement Income Security Act of 1974

(ERISA), Steinbrink is a fiduciary and had to operate under a "Prudent man standard of care."

ECF No. 77 at 17 (quotation omitted).  They contend that ERISA does not allow an agreement to

relieve a fiduciary of responsibility, so THT's trust formation agreement cannot do so.  And they

---

[3] The plaintiffs do not provide Steinbrink's deposition testimony as an exhibit.  Nor do they attach any other evidence to their opposition to show the agreement is not authentic.

assert they have adequately alleged that Steinbrink did not act prudently, so they can pursue their claims for unpaid benefits.  As for the waste of trust funds, they argue that the cases on which Steinbrink relies did not involve a trust like THT and were retirement plans with fixed monthly payments, which is not at issue here.  The plaintiffs contend that their plan benefits were reduced and THT's solvency was threatened, so they have standing to sue.

Steinbrink replies that ERISA does not apply to THT because plans maintained by government entities for public employees are exempt from ERISA's coverage.  Alternatively, he contends that if he owed fiduciary duties, it was to the plan, not to the individual participants. He also asserts that nothing in the formation agreement requires a trustee to act prudently to be protected by the bar against claims for benefits.  Finally, he asserts that the plaintiffs do not have standing to assert claims related to waste of trust funds because they have no interest in those funds.  Rather, he contends that they have a contractual right to benefits.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  "A suit brought by a plaintiff without Article III standing is not a case or controversy, and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (quotation omitted).  The "irreducible constitutional minimum" of Article III standing consists of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted).  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*  Each of these elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*,

504 U.S. 555, 561 (1992).  Thus, at the pleading stage, the plaintiffs "must clearly . . . allege

facts demonstrating each element" of standing. *Spokeo, Inc.*, 578 U.S. at 338 (quotation omitted).

### 1.  Claims for Benefits

The trust formation agreement provides that THT was meant to "conform to" ERISA's

requirements "even though [ERISA] does not now[4] apply to public employee benefit plans."

ECF No. 8-3 at 7.  It also states that "[t]he trustees shall follow the constraints of [ERISA] as the

clearest statement of current trends in the regulation of employee benefit plans." *Id.* at 22.  Under

Article VI, section 3, "[n]o . . . Trustee shall be liable for the failure or omission for any reason

to pay any benefit under any Benefit Plan." *Id.* at 21, 40.

ERISA does not apply to benefit plans for government employees. 29 U.S.C.

§§ 1002(32), 1003(b)(1).  Consequently, ERISA does not apply by its own force to override the

THT plan's terms, void the limitation of liability, or impose a prudential person standard.

However, the trust agreement expresses an intent to comply with ERISA, so I must interpret the

agreement to determine the parties' intent regarding a trustee's liability to individual plan

participants for unpaid benefits.

The agreement provides that it is governed by applicable federal law and Nevada law to

the extent that state law is not preempted by federal law. ECF No. 8-3 at 22.  Because ERISA

does not apply to THT, federal law has no preemptive force, so I apply Nevada law on contract

interpretation.

Under Nevada law, "[c]ontract interpretation is a question of law and, as long as no facts

are in dispute," I look to the agreement's language "and the surrounding circumstances" to

discern the contracting parties' intent. *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 106

---

[4] "Now" meaning  when the trust was formed in 1983. ECF No. 8-3 at 7.

1  (Nev. 2015) (en banc) (quotation omitted).  I apply "[t]raditional rules of contract interpretation

2  . . . to accomplish that result." *Id.* (quotation omitted).  I begin by determining whether the

3  contract's language is "clear and unambiguous; if it is, the contract will be enforced as written."

4  *Id.* (quotation omitted).  "A contract is ambiguous when it is subject to more than one reasonable

5  interpretation." *Anvui, L.L.C. v. G.L. Dragon, L.L.C.*, 163 P.3d 405, 407 (Nev. 2007).  But the

6  mere fact that the parties disagree about how to interpret the contract does not render it

7  ambiguous. *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013).  "Rather, an

8  ambiguous contract is an agreement obscure in meaning, through indefiniteness of expression, or

9  having a double meaning." *Id.* (quotations omitted).

10         Looking at the trust agreement's plain language, the plaintiffs cannot sue Steinbrink for

11  the payment of benefits because Article VI, section 3 unambiguously states a trustee shall not be

12  personally liable for the trust's failure to pay a plan benefit.  Traditional contract interpretation

13  rules support this conclusion.  First, the specific provision limiting a trustee's liability prevails

14  over the general provisions referring to compliance with ERISA standards. *See Shelton v.*

15  *Shelton*, 78 P.3d 507, 510 (Nev. 2003) (stating that a "specific [contract] provision will qualify

16  the meaning of a general provision").  Additionally, a court should not "increase the legal

17  obligations of the parties where the parties intentionally limited such obligations." *Griffin v. Old*

18  *Republic Ins. Co.*, 133 P.3d 251, 254 (Nev. 2006).  Here, the contracting parties intentionally and

19  specifically limited the trustees' liability.  Consequently, the plaintiffs cannot plausibly state a

20  claim that Steinbrink is personally liable to plan participants for unpaid benefits.  I therefore

21  dismiss this aspect of the plaintiffs' claims with prejudice because amendment would be futile.

22  *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) ("Futility alone can justify the denial of

23  a motion for leave to amend.").

### 2.  Claims for Depletion of Trust Funds

Article II, section 5 of THT's trust formation agreement provides that "[t]he entire right, title and interest to the Trust Fund is vested in the Board." ECF No. 8-3 at 10, 33.  Article II, section 6 states that "[n]o employer, association, employee or any other person shall have any right, title or interest in this fund other than as is specifically provided in this agreement, and in the plan, and no part of this fund shall revert to any employer." *Id.* at 10.  Article II, section 7 provides that "[n]o part of this fund shall be paid to any . . . employee, except in the form of benefits to employees as provided in the benefit plans." *Id.*

Under Supreme Court and Ninth Circuit authority, the plaintiffs, as plan participants, have no standing to individually sue for waste of THT's funds.  In *Thole v. U.S. Bank N.A.*, the plaintiffs were participants in an ERISA-defined benefit retirement plan, which entitled them to a fixed payment every month regardless of the plan's value.[5] 590 U.S. 538, 540-41 (2020).  The *Thole* plaintiffs had been paid all their benefits, but they nevertheless sued their former employer for allegedly mismanaging the plan. *Id.*  The Court held that the plaintiffs lacked standing under Article III of the Constitution because they had "no concrete stake" in the suit where their

---

[5] The Supreme Court has explained that a defined benefit plan "consists of a general pool of assets rather than individual dedicated accounts." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (simplified).  Plan members have no "claim to any particular asset that composes a part of the plan's general asset pool.  Instead, members have a right to a certain defined level of benefits." *Id.* at 440.  In contrast, a "defined contribution plan is one where employees and employers may contribute to the plan, and the employer's contribution is fixed and the employee receives whatever level of benefits the amount contributed on his behalf will provide." *Id.* at 439 (quotation omitted).  These plans provide "an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." *Id.* (quotation omitted).  As a result, a defined contribution plan can never have insufficient funds "to cover promised benefits [because] each beneficiary is entitled to whatever assets are dedicated to his individual account." *Id.* (quotation omitted).  Under these definitions, THT is a defined benefit plan that provides an undivided pool of assets from employer and employee contributions to provide health care benefits to plan participants.

benefits would not change regardless of the lawsuit's outcome. *Id.* at 541-42.  In reaching this conclusion, the Supreme Court rejected the plaintiff's analogy to trust law to argue that plan participants have an equitable or property interest in the plan's assets. *Id.* at 542-43.  The Court reasoned that participants in a defined benefit ERISA plan "are not similarly situated to the beneficiaries of a private trust or to the participants in a defined-contribution plan" because in a defined benefit plan under ERISA, the participants are entitled to benefits regardless of the plan's value, and the employer must make up any shortfall.[6] *Id.*

The plaintiffs contend *Thole* is distinguishable because it did not involve a trust like THT.  But the Ninth Circuit applied *Thole*'s reasoning to a multi-employer benefit trust.  In *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, the plaintiffs were participants in a welfare benefits program under ERISA. 62 F.4th 517, 521 (9th Cir. 2023).  The employer's plan participated in a multi-employer plan, that "pool[ed] assets from [many] employer-sponsored plans into a trust fund." *Id.*  The *Winsor* plaintiffs "did not allege that they were deprived of any health benefits, or that the health benefits they signed up for were not fully insured." *Id.* at 522.  They nevertheless sued the plan's management and insurance company for breach of fiduciary duty, alleging that the defendant received commission payments and negotiated excessive administrative fees that, if eliminated, would have lowered plan participants' costs. *Id.* at 522-23.  Based on *Thole*'s reasoning, the Ninth Circuit rejected the plaintiffs' theory that they had

---

[6] The Supreme Court noted that if the plaintiffs "had not received their vested pension benefits, they would of course have Article III standing to sue." *Thole*, 590 U.S. at 542.  The plaintiffs here allege that plan participants suffered out-of-pocket costs because the plan failed to pay benefits. ECF No. 1-2 at 21.  That would suffice to allege Article III standing because such a participant would have suffered a concrete and particularized injury that Steinbrink allegedly caused through his purported acts or omissions that could be redressed by requiring him to pay damages. *See Thole*, 590 U.S. at 540.  However, as discussed above, THT's trust formation agreement precludes a trustee from being liable for unpaid benefits.

1   standing because they had an equitable ownership interest in the plan's trust fund. *Id.* at 527-28.

2   Although the *Winsor* plan was not a defined-benefit plan, it "differ[ed] from a private trust"

3   because it was "a large pool of money that is not divided into individual accounts," and the

4   plaintiffs did "not own beneficial interests that increase or decrease depending on the

5   management of trust assets." *Id.* at 528.

6        The plaintiffs' reliance on *LaRue v. DeWolff, Boberg & Assocs., Inc.*, is misplaced

7   because *LaRue* involved a defined contribution plan (not a defined benefit plan like THT), and

8   the plaintiff alleged that his employer's failure to follow his instructions depleted his individual

9   retirement savings account. 552 U.S. 248, 250-51 (2008).  Additionally, the *LaRue* court

10  considered specific ERISA provisions regarding when a plan participant can sue for a breach of

11  fiduciary duty. *Id.* at 251-52.  As discussed above, those ERISA provisions do not apply to THT,

12  and plan participants cannot seek unpaid benefits from a trustee like Steinbrink under THT's

13  trust formation agreement.  Thus, *LaRue* does not apply.

14       Like the plaintiffs in *Thole* and *Winsor*, the plaintiffs here are entitled to defined benefits

15  but have no equitable interest or property right in THT's funds.  Per the trust agreement, those

16  funds belong solely to THT.  The plaintiffs' interests thus are "more in the nature of a contract."

17  *Thole*, 590 U.S. at 542-43.  Therefore, to the extent that Steinbrink caused a loss to THT, that

18  claim belongs to THT, not individual plan participants.

19       The plaintiffs argue that they nevertheless have standing because they allege that the plan

20  was so mismanaged that it was likely to fail.  In dicta, *Thole* arguably left open the possibility

21  that participants in an ERISA defined benefit plan may have standing to allege waste of plan

22  funds if they allege that "the mismanagement of the plan was so egregious that it substantially

23  increased the risk that the plan and the employer would fail and be unable to pay the participants'

future . . benefits." *Thole*, 590 U.S. at 546.  Merely alleging that the plan was "underfunded for a period of time" is insufficient. *Id.*

The plaintiffs have not plausibly alleged that the mismanagement was so egregious that it substantially increased the risk the plan and CCSD would fail.  The SAC alleges that THT describes its health plans as being "provided by a benefit Plan maintained on a self-insured basis by" CCSD. ECF No. 1-2 at 9.  According to the SAC, in 2012, THT was experiencing average monthly deficits of over $200,000 per month and could "survive in the short term" only "by depleting its reserves." *Id.* at 9.  The plaintiffs also allege that by 2014, "it remained clear that the current CCSD contribution amounts could not sustain THT's ability to provide adequate health care coverage to its teachers." *Id.* at 10; *see also id.* at 11 (stating that CCEA recognized that THT "has been drawing down reserves, and they realize that cannot continue, and the current model is no longer a viable plan").  According to the SAC, the CCSD board held a special meeting in June 2014 at which it was explained that in a self-funded plan, CCSD "Owns Risk," and "has full financial responsibility for the plan." *Id.* at 10.  The plaintiffs allege the defendants eventually came up with a plan to fix the shortfall, but that resulted in the waste of additional plan funds through exorbitant management and consulting fees while failing to deliver claims processing services, resulting in financial and other harms to class members. *Id.* at 12-18, 20-21, 29.  However, the SAC also alleges that CCSD repeatedly stepped in with more funds because it "recogniz[ed] its ability and obligation to contribute additional funds." *Id.* at 19.

Thus, although the plaintiffs have alleged periods of financial instability, they have not plausibly alleged a substantial risk that both the plan and CCSD, which allegedly has full financial responsibility for the plan, would fail.  Although it appears highly unlikely that the plaintiffs will be able to plausibly allege standing, I nevertheless will allow them an opportunity

to amend if they have a factual and legal basis to do so. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." (simplified)).

If the plaintiffs choose to amend, they must consider Steinbrink's argument that any claim for depletion of trust funds must be brought by the trustee, not the beneficiaries. ECF No. 74-1 at 8 n.5. Steinbrink relegated this argument to a footnote, to which the plaintiffs did not respond. I therefore do not resolve the issue at this point. But if the plaintiffs choose to amend and do not plead claims derivatively, they must have a factual and legal basis to plead direct claims against Steinbrink for depletion of THT trust funds. Because I am allowing amendment, I will review the remainder of Steinbrink's arguments to determine whether amendment is futile as to particular claims.

### C.  Statute of Limitations

Steinbrink contends that even if the plaintiffs have standing, their claims are barred by the statute of limitations because each claim is subject to a limitation period of four years or less, and more than four years have passed since his alleged conduct from 2012 through June 2019. He argues that although he was named as a defendant in the plaintiffs' original complaint filed in May 2018, the plaintiffs dropped him as a defendant in the first amended complaint (FAC) in September 2018. He contends that the plaintiffs then waited more than four years to file the SAC in July 2023, and the statute of limitations ran between the time the FAC and SAC were filed. He asserts that the relation back doctrine does not apply in these circumstances.

The plaintiffs respond that their claims are timely because they relate back to the original complaint that named Steinbrink as a defendant. They contend that the SAC relates back

because their claims against Steinbrink arise out of the same conduct and occurrences that they attempted to set out in their original complaint.  And they contend that because Steinbrink was named in the original complaint, he has known about the case since its inception and has not been disadvantaged because THT has continuously participated in the case and therefore presumably has preserved relevant evidence.  Alternatively, they argue that the limitation periods were tolled by Nevada's discovery rule because "the basis for liability against Steinbrink was not discovered by Plaintiffs until discovery revealed the extent of the conduct and gross breaches of fiduciary duties by Steinbrink." ECF No. 77 at 17.

Steinbrink replies that the plaintiffs are taking contradictory positions in asserting that the SAC arises out of the same facts and theories of liability as the original complaint in 2018 so it should relate back, yet they did not discover the basis for his liability until 2023.  He argues that because the plaintiffs voluntarily dismissed him in the FAC and then let more than four years pass before filing the SAC, he did not know he was a proper party and has been misled to his prejudice.  He contends the discovery rule does not apply because the plaintiffs have not pleaded facts to support it, and, in any event, the plaintiffs knew of possible claims against him when they named him in the original complaint.  Finally, he contends that equity weighs against allowing the plaintiffs to bring him back into the case given this procedural history.

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (simplified).  According to the SAC, Steinbrink ceased acting as a THT trustee in June 2019.  ECF No. 1-2 at 8.  The SAC was filed in July 2023. *Id.* at 2.  The parties agree that each of the claims the plaintiffs assert against Steinbrink is governed by a limitation period of four years or

1   less.  Because Steinbrink was not a named defendant in the FAC, and the SAC was filed more

2   than four years after Steinbrink's last alleged conduct, the plaintiffs' claims against him are

3   timely only if either the relation back doctrine or discovery rule applies.

4           1.  Rule 15(c)(1)(B)

5           The plaintiffs argue that their claims against Steinbrink relate back under Federal Rule of

6   Civil Procedure 15(c)(1)(B).  Steinbrink contends that this portion of Rule 15 does not apply

7   because the SAC did not just amend the plaintiffs' claims, it added him back in years after the

8   plaintiffs had dismissed him when they filed the FAC without naming him as a party.

9           Federal Rule of Civil Procedure 15(c) "governs when an amended pleading 'relates back'

10  to the date of a timely filed original pleading and is thus itself timely even though it was filed

11  outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538,

12  541 (2010).  Rule 15(c)(1)(B) allows an amended pleading to relate back to the original

13  complaint when "the amendment asserts a claim or defense that arose out of the conduct,

14  transaction, or occurrence set out—or attempted to be set out—in the original pleading."

15          The parties cite no controlling caselaw as to whether a claim can relate back under Rule

16  15(c)(1)(B) where a defendant is named in the original complaint, the plaintiff dismisses that

17  defendant (but not others) through an amended complaint that no longer names that defendant,

18  and then later amends again to try to add the defendant back in after the statute of limitations has

19  run.  I have not located any either.

20          However, one federal district court addressed a similar issue and did not allow a plaintiff

21  to use Rule 15(c)(1)(B) to relate back claims she had voluntarily dismissed and then amended to

22  refile the claims after the limitations period expired. *See Alvarado v. Miami-Dade Cnty.*, No. 15-

23  22193-CIV, 2016 WL 9503810, at *15 (S.D. Fla. Oct. 24, 2016).  In reaching this result,

14

*Alvarado* relied on the legal principle that in relation to the statute of limitations, a voluntary dismissal has the effect of placing the parties in the position as if the suit had never been filed. *Id.* at *15.

The Eight Circuit reached a similar conclusion where the plaintiff voluntarily dismissed one defendant, but the district court later determined that the dismissed defendant was an indispensable party and reinstated the defendant in the case even though the statute of limitations had run. *Curtis v. United Transp. Union*, 648 F.2d 492, 493-94 (8th Cir. 1981).  The Eighth Circuit concluded this was error because the plaintiff voluntarily dismissed his claim and "the entry of a voluntary dismissal without prejudice leaves the action as if suit had never been brought for purposes of the statute of limitations." *Id.* at 495.  The Eighth Circuit was grappling with whether Rule 54(b)[7] allows a voluntarily dismissed defendant to be brought back into a case after the statute of limitations had run where the claims against the other defendants had not been resolved.  I agree with the Eighth Circuit's reasoning that "Rule 54(b) does not provide [such] an exception." *Curtis*, 648 F.2d at 495.

The Ninth Circuit likewise recognizes the principle that when a plaintiff voluntarily dismisses its claims, the statute of limitations continues to run. *See Omnibus Fin. Corp. v. United States*, 566 F.2d 1097, 1102-03 (9th Cir. 1977); *Humphreys v. United States*, 272 F.2d 411, 412

---

[7] Rule 54(b) provides that when a lawsuit involves multiple parties,

> the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

1   (9th Cir. 1959).[8]  The reason for this rule supports the conclusion that the plaintiffs' claims in

2   this case cannot relate back to the original complaint after they voluntarily dismissed Steinbrink.

3   The concern is that the "statutes of limitations would be easily nullified" if the "plaintiff could

4   file a suit, dismiss it voluntarily the next day, and have forever to refile it." *Elmore v. Henderson*,

5   227 F.3d 1009, 1011 (7th Cir. 2000).  Here, the plaintiffs sued Steinbrink within the limitation

6   period, but then voluntarily dismissed him, let the statute of limitations run against him while

7   they pursued claims against other defendants, and now seek to bring him back into the case years

8   later.  This is not a scenario for which Rule 15(c)(1)(B) allows relation back.  The plaintiffs'

9   claims against Steinbrink therefore do not relate back under Rule 15(c)(1)(B).[9]

10   2. Discovery Rule

11   Under Nevada law, a limitations period begins to run "from the day the cause of action

12   accrued." *Clark v. Robison*, 944 P.2d 788, 789 (Nev. 1997) (per curiam).  A cause of action

13

---

14   [8] Other circuits agree. *See, e.g.*, *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)
(stating that "a suit dismissed without prejudice is treated for statute of limitations purposes as if

15   it had never been filed"); *Garfield v. J.C. Nichols Real Est.*, 57 F.3d 662, 666 (8th Cir. 1995)
(stating that a "dismissal without prejudice does not toll a statute of limitation" because "[o]nce a

16   dismissal without prejudice is entered and the pending suit is dismissed, it is as if no suit had
ever been filed").

17
[9] The plaintiffs do not contend that the SAC's claims relate back under Rule 15(c)(1)(C).  An

18   amended complaint relates back under Rule 15(c)(1)(C) when: "(1) the basic claim . . . arise[s]
out of the conduct set forth in the original pleading; (2) the party to be brought in . . . received

19   such notice that it will not be prejudiced in maintaining its defense; [and] (3) that party must or
should have known that, but for a mistake concerning identity, the action would have been

20   brought against it." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1202 (9th Cir.
2014) (quotation omitted).  "Additionally, the second and third requirements must have been

21   fulfilled within 120 days after the original complaint is filed, as prescribed by Federal Rule of
Civil Procedure 4(m)." *Id.*

22   Once the plaintiffs voluntarily dismissed Steinbrink, he did not have notice that that they
might try to bring him back into the case after the statute of limitations had run.  Additionally,

23   given that he was named in the original complaint and then dropped from the FAC, he would not
have known that but for a mistake concerning his identity, the action would have been brought
against him.  The plaintiffs' claims therefore do not relate back under Rule 15(c)(1)(C).

16

generally accrues "when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990); *see also State ex rel. Dep't of Transp. v. Pub. Emps.' Ret. Sys. of Nev.*, 83 P.3d 815, 817 (Nev. 2004) (en banc) ("A cause of action 'accrues' when a suit may be maintained thereon." (quotation omitted)).  Nevada has adopted the discovery rule, and thus time limits generally "do not commence and the cause of action does not 'accrue' until the aggrieved party knew, or reasonably should have known, of the facts giving rise to the damage or injury." *G & H Assocs. v. Ernest W. Hahn, Inc.*, 934 P.2d 229, 233 (Nev. 1997).

In his reply, Steinbrink relies on *Prescott v. United States*, 523 F. Supp. 918, 940 (D. Nev. 1981) to argue that the plaintiffs must allege in the SAC facts about when and how they discovered their claims against Steinbrink and the circumstances excusing the delay in amending to add him as a defendant.  However, it is not clear whether the SAC needed to do so under Nevada's discovery rule.[10]  I need not resolve whether the plaintiffs must plead discovery rule facts in the SAC because they do not provide sufficient tolling facts either in the SAC or in their response to Steinbrink's motion.  The plaintiffs state in only conclusory fashion that "the basis for liability against Steinbrink was not discovered by Plaintiffs until discovery revealed the extent of the conduct and gross breaches of fiduciary duties by Steinbrink." ECF No. 77 at 17.  The plaintiffs do not identify what facts they discovered or when they discovered them that would support delayed accrual under the discovery rule, particularly given that the plaintiffs

---

[10] *Compare Siragusa v. Brown*, 971 P.2d 801, 807 n.6 (Nev. 1998) (stating that *Prescott*'s express pleading requirements are not the law of Nevada) and *Addison v. Countrywide Home Loans, Inc.*, No. 2:10-cv-01304-LDG-PAL, 2011 WL 146516 at *5 (D. Nev. Jan. 14, 2011) (citing *Siragusa*'s footnote six for the proposition that when applying Nevada's discovery rule, "a plaintiff must prove, but need not plead, tolling facts") *with Reynolds v. Wolff*, 916 F. Supp. 1018, 1021-22 (D. Nev. 1996) (applying Supreme Court of Nevada precedent, which cited *Prescott* pleading standards, to the discovery rule).

1  named Steinbrink in the original complaint and presumably had a factual basis to do so at that

2  time.

3         Consequently, I grant Steinbrink's motion to dismiss the plaintiffs' claims as untimely.

4  However, because the plaintiffs could amend to add facts supporting application of the discovery

5  rule, thus making their claims timely, I grant the plaintiffs leave to amend to do so if such facts

6  exist. *Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1118.

7         **D.  Violations of NRS §§ 287.010 and 287.015**

8                <u>1.  NRS § 287.010</u>

9         The SAC alleges Steinbrink violated NRS § 287.010 by allowing Wellhealth to

10  administer the benefit fund without being licensed under NRS chapter 683A and by not ensuring

11  WellHealth's administrative charges had been approved by the Nevada Insurance Commissioner.

12  ECF No. 1-2 at 35-36.  Steinbrink argues that there is no private right of action under NRS

13  § 287.010.  The plaintiffs respond that there is one.

14         NRS § 287.010 allows the governing body of a school district to provide group health

15  insurance to its employees through a variety of funding mechanisms.  Under § 287.010(1)(c), if

16  the school district chooses to provide benefits through a "self-insurance reserve fund," then

17  "[a]ny independent administrator . . . is subject to the licensing requirements of chapter 683A of

18  NRS, and must be a resident of this State."  Additionally, Nevada's Commissioner of Insurance

19  must pre-approve the contract with an independent administrator "as to the reasonableness of

20  administrative charges in relation to contributions collected and benefits provided." *Id.*

21         There is no dispute that there is no express provision for a private right of action under

22  this section.  Consequently, the plaintiffs can assert a claim under the statute only if there is an

23  implied right of action.  The Supreme Court of Nevada has not addressed whether there is an

implied right of action under NRS § 287.010(1)(c).  I therefore predict what that court would do if faced with the question. *See In re Kekauoha-Alisa*, 674 F.3d 1083, 1087-88 (9th Cir. 2012) ("Absent a controlling state court decision, our duty is to predict how the highest state court would decide the issue.").

Determining whether there is an implied private cause of action for damages "is a question of legislative intent." *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 100-01 (Nev. 2008) (en banc).  "To ascertain the Legislature's intent in the absence of plain, clear language, [I] examine the entire statutory scheme, reason, and public policy." *Id.*  The analysis is guided by three factors: "(1) whether the plaintiffs are of the class for whose especial benefit the statute was enacted; (2) whether the legislative history indicates any intention to create or to deny a private remedy; and (3) whether implying such a remedy is consistent with the underlying purposes of the legislative scheme." *Id.* at 101 (simplified).  "The three factors are not necessarily entitled to equal weight," and "the determinative factor is always whether the Legislature intended to create a private judicial remedy." *Id.*  The "absence of an express provision providing for a private cause of action to enforce a statutory right strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy." *Id.*  Additionally, if the Legislature has created other enforcement mechanisms, that weighs against finding an implied private right of action. *Id.* at 102-03.

The inquiry under the first factor "is not whether [the plaintiffs] would benefit from the statute, but rather, whether the Legislature intended to confer a right on [plan participants] as a class." *Id.* at 102 n.12.  As in *Baldonado*, NRS § 287.010(c) does not "directly confer[] a right on" plan participants. *Id.*  Rather, § 287.010 "regulates and focuses on the [government employer or independent administrator's] conduct." *Id.*  Thus, even if "the statute was enacted at least in

part to protect [plan participants like the plaintiffs], it is far less clear from the statutory language that the Legislature intended to confer upon those [participants] a private remedy." *Id.*  The first factor thus does not support implying a private right of action.

The parties have not pointed to anything in the legislative history that sheds light on the Legislature's intent with respect to a private right of action.  Both instead point to the statutory language itself to suggest the legislative intent.  The statute's absence of language suggesting an intent to allow for private enforcement weighs against implying one.

Finally, the third factor also weighs against implying a private right of action for damages.  The statute requires an independent administrator to be licensed under NRS chapter 683A. NRS § 287.010(c).  Chapter 683A places licensure and discipline in the hands of the Commissioner of Insurance. *See, e.g.*, NRS §§ 683A.451, 683A.461, 683A.490, 683A.510. Additionally, the reasonableness of charges is subject to the Commissioner's review. NRS § 287.010(c).  Because the only statutory language regarding oversight and enforcement places that power in the Commissioner, that suggests the Legislature did not intend to allow a private right of action for damages.  Allowing potentially thousands of individual plan participants to sue for damages is inconsistent with the statute, which places licensure and approval with the Commissioner.  Based on the *Baldonado* factors, I predict that the Supreme Court of Nevada would hold that there is no private right of action for damages under NRS § 287.010(c). Amending to replead this claim therefore would be futile, so I dismiss it with prejudice.

### 2.  NRS § 287.015

Steinbrink argues that the plaintiffs cannot assert a claim under NRS § 287.015 because that statute does not apply to THT and because there is no private right of action under the

1  statute.  The plaintiffs respond that they have sufficiently alleged Steinbrink violated NRS

2  § 287.015 and there is an implied right of action under the statute.

3      As explained in my order on CCSD's motion to dismiss, NRS § 287.015 does not apply

4  to THT.  The plaintiffs therefore cannot state a claim under this statute even if contains a private

5  right of action.  Amending to replead this claim would be futile, so I dismiss it with prejudice.

6      **E.  Economic Loss Doctrine**

7      Steinbrink argues that the plaintiffs' negligence, gross negligence, negligent

8  misrepresentation, and negligence per se claims are barred by the economic loss doctrine because

9  they allege purely economic losses.  He contends that the plaintiffs' losses are more

10 appropriately addressed by contract law because the plaintiffs had a contractual right to benefits

11 in exchange for the premiums they paid.  The plaintiffs respond that the economic loss doctrine

12 does not apply because they have not alleged a breach of contract claim against Steinbrink.  They

13 contend that because Steinbrink breached duties imposed by law, the doctrine does not bar their

14 claims.  The plaintiffs also assert that under Nevada law, negligent misrepresentation claims are

15 not barred by the economic loss doctrine.  In reply, Steinbrink contends that the plaintiffs do not

16 have to assert a breach of contract claim for the doctrine to apply.  He also argues that negligent

17 misrepresentation claims are barred by the doctrine unless they fall within an exception, which

18 the plaintiffs have not shown to be the case here.

19     "The economic loss doctrine is a judicially created rule" that "marks the fundamental

20 boundary between contract law, which is designed to enforce the expectancy interests of the

21 parties, and tort law, which imposes a duty of reasonable care and thereby generally encourages

22 citizens to avoid causing physical harm to others." *Terracon Consultants W., Inc. v. Mandalay*

23 *Resort Grp.*, 206 P.3d 81, 85-86 (Nev. 2009) (simplified).  Its purpose is "to shield defendants

1    from unlimited liability for all of the economic consequences of a negligent act, particularly in a

2    commercial or professional setting, and thus to keep the risk of liability reasonably calculable."

3    *Id.* at 83.

4        The "doctrine bars unintentional tort actions when the plaintiff seeks to recover purely

5    economic losses," subject to exceptions "when strong countervailing considerations weigh in

6    favor of imposing liability." *Id.* at 86 (simplified).  Thus, the economic loss doctrine bars a

7    plaintiff from asserting a negligence claim for economic losses "unless there is personal injury or

8    property damage." *Id.* at 87.  However, some courts "have made exceptions to allow such

9    recovery in certain categories of cases, such as negligent misrepresentation and professional

10    negligence actions against attorneys, accountants, real estate professionals, and insurance

11    brokers." *Id.*

12        The plaintiffs do not dispute that their losses are purely economic.  Instead, they contend

13    that the doctrine does not apply because they have not asserted a breach of contract claim against

14    Steinbrink.  The plaintiffs cite no authority that the doctrine applies only where the plaintiff

15    asserts a breach of contract claim against the defendant.  The doctrine would be easily evaded if

16    the plaintiff could simply refrain from asserting a breach of contract claim to avoid its

17    application.  Moreover, the plaintiffs asserted a breach of contract claim against THT. ECF No.

18    1-2 at 24.  They allege Steinbrink was negligent in his duties as a THT trustee in administering

19    THT's plan under which the plaintiffs claim contractual rights.  Contract law is thus "better

20    suited to resolve" these claims, so I dismiss the plaintiffs' negligence, gross negligence, and

21    negligence per se claims with prejudice as barred by the economic loss doctrine. *Terracon*

22    *Consultants W., Inc.*, 206 P.3d at 89.

23

As for the plaintiffs' negligent misrepresentation claim, the parties dispute whether the economic loss doctrine bars this type of claim.  The Supreme Court of Nevada has stated that *Terracon* "left open the door for exceptions to the economic loss doctrine for negligent misrepresentation claims in a certain category of cases when strong countervailing considerations weigh in favor of imposing liability." *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1153 (Nev. 2013), *as corrected* (Aug. 14, 2013) (simplified).  However, the court applied the economic loss doctrine to bar a negligent misrepresentation claim against commercial construction design professionals "because contract law is better suited for resolving such claims" in commercial construction situations where "the highly interconnected network of contracts delineates each party's risks and liabilities in case of negligence, which in turn exert significant financial pressures to avoid such negligence." *Id.* (simplified).  But the court stated that "[l]iability is proper in cases where there is significant risk that the law would not exert significant financial pressures to avoid such negligence." *Id.*  "These types of cases encompass economic losses sustained, for example, as a result of defamation, intentionally caused harm, negligent misstatements about financial matters, and loss of consortium." *Id.*

The plaintiffs' negligent misrepresentation claim against Steinbrink is based on his alleged statements or omissions regarding the "terms and conditions of health care coverage." ECF No. 1-2 at 32.  The terms and conditions of the plaintiffs' health care coverage were governed by contract, as were Steinbrink's duties and liabilities as a trustee. *Id.* at 24; ECF No. 74-3 at 18 (the trust formation agreement stating that "Subject only to the provisions of the Collective Bargaining Agreement, the rights and duties of all parties, including Employers, Associations, Employees, Beneficiaries and the Trustees shall be governed by the provision of this Agreement and Declaration of Trust, the Benefit Plans, and any insurance policies and

contracts procedure or executed pursuant to this Agreement and Declaration of Trust."). Contract law is thus better suited to resolving Steinbrink's alleged negligence.  That is consistent with the doctrine's purpose to shield a trustee like Steinbrink from unlimited liability for all the economic consequences of a negligent representation in a commercial or professional setting, such as acting as a trustee for a health benefit trust governing thousands of individuals.  The economic loss doctrine thus bars the plaintiffs' negligent misrepresentation claim.  Amending to replead the negligence claims would be futile, so I dismiss them with prejudice.

### F. Pleading with Particularity

Steinbrink contends that the plaintiffs fail to plead their fraud-based claims (fraudulent misrepresentation, deceptive trade practices, and breach of fiduciary duty)[11] with particularity as required under Federal Rule of Civil Procedure 9(b).  The plaintiffs respond that with respect to the breach of fiduciary duty claim, they have adequately alleged Steinbrink owed a fiduciary duty by virtue of his position on the board of trustees, and that he breached that duty by retaining agents for THT who were not qualified or lacked required licensing.  They also contend that they have alleged he is liable for the breaches of other fiduciaries because he knowingly participated in their breaches and did not remedy those breaches.  With respect to deceptive trade practices and fraud, the plaintiffs contend that because Steinbrink retained defendants Gary Earl and Michael Skolnik as THT's CEOs and did not act prudently in retaining WellHealth, he is liable for the misrepresentations of WellHealth, Earl, and Skolnik.  The plaintiffs contend they have adequately outlined the overall fraud and Steinbrink's role in the alleged misconduct.  In reply, Steinbrink argues that the plaintiffs are attempting to rely on a vicarious liability theory that is

---

[11] Steinbrink includes negligent misrepresentation in this argument, but because I have already dismissed it with prejudice, I do not discuss it further.

not pleaded in the SAC, and his position as chairman of THT's board of trustees does not make him liable for others' misstatements.

"Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotation omitted).  The plaintiff also "must set forth what is false or misleading about a statement, and why it is false." *Id.* (quotation omitted).  "Allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) (simplified).

### 1.  Vicarious Liability

The SAC does not allege, even in conclusory form, that Steinbrink is vicariously liable for others' fraud or breaches of fiduciary duties, so the plaintiffs have not pleaded fraud with particularity under Rule 9(b) with respect to this theory.  The plaintiffs cite no authority for the proposition that Steinbrink can be liable for other defendants' alleged fraud merely based on his position as THT's chairman of the board.  Nevertheless, I will allow the plaintiffs to amend if they have facts and a legal basis to do so.

### 2.  Fraudulent Misrepresentation

To state a fraud claim, a plaintiff must plausibly allege: (1) the defendant made a false representation, (2) the defendant knew or believed the representation was false, (3) the defendant intended to induce the plaintiff to rely on the false representation, (4) the plaintiff justifiably relied on the misrepresentation, and (5) damages. *Nevada State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021).  "With respect to the false representation element, the

1  suppression or omission of a material fact which a party is bound in good faith to disclose is

2  equivalent to a false representation, since it constitutes an indirect representation that such fact

3  does not exist." *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007).

4       The plaintiffs do not identify what statements or omissions by Steinbrink form the basis

5  of this claim, nor do they identify other details, such as timing, falsity, or reliance.  The SAC

6  identifies alleged misrepresentations by other defendants, but not by Steinbrink. ECF No. 1-2 at

7  38.  In their response, the plaintiffs argue that they have alleged Steinbrink's overall role and

8  that he is liable for others' fraud.  That is insufficient under Rule 9(b).  I therefore dismiss this

9  claim, with leave to amend.

10              <u>3.  Deceptive Trade Practices</u>

11       Under NRS § 41.600(1), "any person who is a victim of consumer fraud" may sue for

12  damages.  Consumer fraud includes "[a] deceptive trade practice" as defined by the Nevada

13  Deceptive Trade Practices Act, including making false representations to sell a good or service.[12]

14  NRS §§ 41.600(2)(e), 598.0915.  The plaintiffs allege that the defendants "made false

15  representations and used deception . . . in connection [with] purporting to provide health

16  insurance coverage to Plaintiffs . . . then refusing in bad faith to comply with [the] contractual

17  obligations to provide the agreed-upon coverage." ECF No. 1-2 at 37.  The plaintiffs also allege

18  that the defendants "intentionally . . . devised a scheme to offer health care coverage, then

19

20  _____

21  [12] As relevant here, a deceptive trade practice occurs when, "in the course of his or her business or occupation," a person: "Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith" under NRS § 598.0915(5); "Advertises goods or services with intent not to sell or lease them as advertised" under NRS § 598.0915(9); and "Knowingly makes any other false representation in a transaction" under NRS § 598.0915(15). *See* ECF No. 1-2 at 37.

22

23

1   refused to honor the terms and conditions of the health plan, all while continuing to accept health

2   insurance premiums for coverage they failed to adequately provide to Plaintiffs." *Id.* at 37-38.

3        Steinbrink argues the plaintiffs have not pleaded this claim with particularity.  The

4   plaintiffs respond in conclusory fashion that "[a]s detailed in Plaintiffs' factual allegations

5   regarding Steinbrink's conduct and his liability flowing from the wrongful acts of the Trust

6   agents he entrusted," the plaintiffs have adequately alleged a claim for deceptive trade practices.

7   ECF No. 77 at 24.  This conclusory response does not support a claim that must be pleaded with

8   particularity.  I will not construct the plaintiffs' arguments for them.  I therefore dismiss this

9   claim, with leave to amend.

10                           <u>4.  Breach of Fiduciary Duty</u>

11        To state a claim for breach of fiduciary duty, the plaintiffs must plausibly allege:

12   (1) Steinbrink owed them a fiduciary duty, (2) he breached that duty, and (3) they were damaged

13   as a result. *Guzman v. Johnson*, 483 P.3d 531, 538 (Nev. 2021) (en banc).  Under Nevada law, a

14   breach of fiduciary duty claim sounds in fraud. *See Nevada State Bank v. Jamison Fam. P'ship*,

15   801 P.2d 1377, 1382 (Nev. 1990).  Thus, it must be pleaded with particularity under Rule 9(b).

16        The SAC alleges that Steinbrink served as a THT trustee and chairman of the board, so

17   he owed a fiduciary duty to the plaintiffs. ECF No. 1-2 at 31.  Steinbrink served as chairman

18   during the time that WellHealth managed and administered the THT health plan. *Id.* at 8, 12, 16,

19   31.  The plaintiffs allege Steinbrink breached his fiduciary duties by authorizing THT to pay

20   WellHealth millions of dollars in allegedly excessive fees even though he "knew or should have

21   known that the WellHealth entities were unlicensed, unqualified and incapable of performing the

22   contracted services." *Id.* at 13, 16.  Additionally, the SAC alleges that THT's board, "led by

23   Chairman Steinbrink intentionally halted and prevented the THT leadership team's efforts to

secure $37 million of Retiree Premium Subsidy Funds despite their responsibility and obligation to the retired teachers of CCSD enrolled in THT health coverage following the 2014 merger." *Id.* at 16.

The plaintiffs have plausibly pleaded a breach of fiduciary duty claim against Steinbrink. They have alleged a basis for his fiduciary duty as trustee, pleaded with particularity the alleged breaches, and allege resulting harm through waste of trust funds. The SAC gives Steinbrink sufficient notice of the particular misconduct so that he can defend against the charge. Repleading this claim in an amended complaint therefore would not be futile.

In Steinbrink's reply, he argues that the plaintiffs have not plausibly alleged the existence of a fiduciary duty. ECF No. 83 at 12. I decline to consider this argument because Steinbrink raised it for the first time in his reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). In his original motion, Steinbrink argued only that "the SAC fails to plead that Steinbrink made a misrepresentation or any specific facts about Steinbrink's alleged breach of fiduciary duty." ECF No. 74-1 at 16. He did not argue that there was no plausible allegation of a fiduciary duty. Although I decline to consider this argument at this time, the plaintiffs should consider it in determining whether and how to amend if they intend to replead this claim against Steinbrink.

## II.  CONCLUSION

I THEREFORE ORDER that defendant Michael Steinbrink's motion to dismiss **(ECF No. 74) is GRANTED in part** as set forth in this order.

I FURTHER ORDER that the plaintiffs may file a third amended complaint consistent with this order if a basis in fact and law exists to do so. Failure to file a third amended complaint

by June 28, 2024 will result in dismissal of all the plaintiffs' claims against defendant Michael
Steinbrink with prejudice.

DATED this 29th day of May, 2024.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE